UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| RAION HILL | * | CIVIL ACTION NO. 15-6367 |
| | * | |
| | * | SECTION: "R"(1) |
| VERSUS | * | |
| | * | JUDGE SARAH S. VANCE |
| | * | |
| SOCIAL SECURITY ADMINISTRATION | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************* | * | |

## REPORT AND RECOMMENDATION

The plaintiff, Raion Hill ("Mr. Hill"), seeks judicial review, pursuant to Section 405(g) of the Social Security Act (the "Act"), of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits and supplemental security income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. § 1381. The matter has been fully briefed on cross-motions for summary judgment. For the following reasons, IT IS RECOMMENDED that the Motion for Partial Summary Judgment with Amended Onset Date by Mr. Hill (Rec. Doc. 15) be DENIED; and the cross-motion of the Commissioner for summary judgment (Rec. Doc. 19) be GRANTED.

## Procedural Background

Mr. Hill applied for SSI on February 20, 2013, asserting a disability onset date of October 1, 2012. R. at 175, 177. He alleged the following illnesses, injuries or conditions: shoulder injuries (nerve damage), knee injury, ankylosing spondylitis, neck pain, sleep issues, headaches, memory issues. R. at 72-73, 83-84. On June 19, 2013, his claim was denied by the state agency. R. at 80, 90. The Disability Determination Explanations concluded "[t]he medical evidence shows that although your condition may limit you, it is not severe enough to render you totally disabled. . . .

We have determined that your condition is not severe enough to keep you from working." R. at 81, 91.

Mr. Hill obtained counsel and requested a hearing before an Administrative Law Judge ("ALJ"). R. at 92, 98, 100. Mr. Hill's counsel withdrew on August 8, 2014, shortly before the August 20, 2014, hearing. R. at 138. The ALJ continued the hearing to allow Mr. Hill to obtain representation. R. at 65-67. Mr. Hill was represented by counsel when the hearing was conducted on November 24, 2015. R. at 26. On January 30, 2015, the ALJ issued an adverse decision. R. at 15. The Appeals Council denied review on October 1, 2015.

On November 30, 2015, Mr. Hill filed a Complaint in federal court to review the Commissioner's decision. (Rec. Doc. 1). The Commissioner answered and filed the administrative record. (Rec. Docs. 12, 13). The parties filed cross-motions for summary judgment. (Rec. Docs. 15, 19). In conjunction with his Motion for Summary Judgment, Mr. Hill requested that his disability onset date be amended to January 1, 2014. (Rec. Doc. 15). Mr. Hill is represented by counsel.

**Evidence in the Record**

Because this appeal turns on the threshold issue of whether Mr. Hill has been engaged in substantial gainful activity ("SGA"), the following recitation of record evidence includes only that evidence relevant to the SGA determination and not the evidence of Mr. Hill's allegedly disabling condition.

Mr. Hill played football at Louisiana State University and left his senior year to play professional football. Hearing Tr., at 3-4, R. at 30-31. His earnings records indicate that he was employed by the Buffalo Bills from 1999-2002. R. at 193-94. After his time with the NFL, he

played for the Canadian Football League from 2004-2005. R. at 456. In recent years, Mr. Hill has been acting. Hearing Tr., at 9, R. at 36.

Mr. Hill testified that when he gets an acting gig, the "contracts are pretty good" and that "you can work a couple of shows and make a good bit." R. at 42. Mr. Hill's earnings records indicate annual earnings of $45,485 in 2013. R. at 239-54.  Assuming he worked all year long, this averages out to $3,790.42 per month. Mr. Hill testified that he only worked two shows in 2014 and the remainder of his 2014 income was residual. R. at 32. There was no evidence before the ALJ as to what portion (if any) of the earnings reported as wages in 2014 were residual. The record before the ALJ shows that in the first and second quarters of 2014, Mr. Hill received wages totalling $28,831. R. at 239-249. The record does not reveal whether Mr. Hill worked all six months, but assuming that he did, this averages out to $4,805.17 per month. It is unclear from the record if Mr. Hill had no income for the last two quarters of 2014 or whether records for that period were unavailable.

Mr. Hill testified that he worked only two shows in 2014. R. at 32. No testimony or other record evidence clarifies which payments in Mr. Hill's earnings records correspond with the two shows Mr. Hill worked in 2014. There is also no testimony or other evidence to indicate what months Mr. Hill was working on the two shows. Mr. Hill did testify at the November 2014 hearing that he last worked "a couple" weeks ago. R. at 31. When the ALJ asked about the many sources of income in Mr. Hill's 2013 earnings records, Mr. Hill explained that although he may have acted in a show several years ago, whenever it plays on DVD or TV, he still receives income, which he described as residuals. R. at 35. He further explained that the Screen Actor's Guild keeps track of the payments. Id.  It appears the ALJ was reviewing Mr. Hill's earning records when she stated that the paperwork "indicates that these are possibly residuals, but this doesn't tell me from what

work these residuals come from." R. at 34. The ALJ told Mr. Hill's counsel that it would "be up to you to be able to find that and give me that information." Id. Later in the hearing the ALJ told Mr. Hill's counsel that "I'm going to need to have some type of a – I don't know if you want to do a chart or something that shows – we need to know what was actually done and where did the earnings come from? Where was the work performed?" R. at 42-43. Mr. Hill never provided this information to the ALJ.

In conjunction with his request for review of the ALJ's decision by the Appeals Council, Mr. Hill's counsel attached a letter written by Richard G. Mueller, a CPA with Ericksen Krentel & Laporte dated June 22, 2015.[1] R. at 326. Mr. Mueller reported that Mr. Hill receives passive residual payments as royalties from the movies and television shows in which he performed in prior years. Id. The letter attaches a report from a "Residual Tracker" found on the website for the Screen Actors Guild-American Federation of Television and Radio Artists. Id. Mr. Mueller reported that the Residual Tracker shows gross residual payments to Mr. Hill of $41,750 in 2014. Id. He also reported that Mr. Hill's tax year 2014 Form 1040 reports gross taxable wages of $48,879. Id. The letter does not attach a copy of Mr. Hill's 2014 tax return. Mr. Mueller submits that residual payments are reported as income on IRS Form W-2, even though they are not for work performed during the tax year. Id. Thus, Mr. Mueller simply subtracted the Residual Tracker

---

[1] This letter and its attachments were considered by the Appeals Council, R. at 5, and, accordingly, they are considered part of the record on this appeal. See 20 C.F.R. § 404.970 ("The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision"); see also Higginbotham v. Barnhart, 405 F.3d 332, 337 (5th Cir. 2005) ("[E]vidence submitted for the first time to the Appeals Council is part of the record on appeal."). The Commissioner argues that the evidence should only be considered part of the record if the plaintiff shows good cause for failing to previously include it. The Court does not find support for this position in the materials cited by the Commissioner. In Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994), the claimant argued that he provided the new evidence to the Appeals Council, but there was no evidence the Appeals Council had received it. The new evidence in Haywood v. Sullivan, 888 F.2d 1463, 1466 (5th Cir. 1989), did not come into existence until after the federal lawsuit was filed.

payments from the gross wages and concluded that Mr. Hill actually only earned $7,174 in 2014 for work performed in 2014. Id.  Mr. Mueller did not state what months Mr. Hill worked in 2014.

## Decision of the Administrative Law Judge

The ALJ found that Mr. Hill meets the insured status requirements of the Act through September 30, 2017. R. at 20. The ALJ concluded that Mr. Hill has engaged in substantial gainful activity since October 1, 2012 (20 C.F.R. § 404.1520(b), 404.1571 *et seq.*, 416.920(b) and 416.971 *et seq.*). Id.  In making this determination, the ALJ considered Mr. Hill's argument that his earnings were either unearned or residuals. Id.  The ALJ noted that she had requested additional information from Mr. Hill's counsel explaining Mr. Hill's significant earnings subsequent to the onset date as well as a chart indicating when exactly work was performed and which residuals flowed from such work. Id.  The ALJ never received this information. The ALJ also noted that Mr. Hill's counsel had requested additional time to obtain medical records but had not indicated additional time was needed to obtain information related to the SGA analysis. R. at 21. The ALJ considered Mr. Hill's testimony that he has worked "a couple of shows" since the onset date and that when he gets a "gig" the contracts are "pretty good" and he could earn "a good bit." Id.  The ALJ concluded that Mr. Hill's earning records indicate performance of SGA after the alleged onset date with no significant evidence to indicate otherwise. Id.

As noted above, Mr. Hill included a letter from a CPA along with his brief to the Appeals Council. In denying Mr. Hill's request that it review the ALJ's decision, the Appeals Council stated that it considered the reasons Mr. Hill disagrees with the ALJ's decision and the additional evidence. R. at 1-2.

## Statement of Issues on Appeal

Issue No. 1.    Whether the ALJ erred in finding that Mr. Hill has been engaged in substantial gainful activity.

Issue No. 2.     Whether the ALJ erred in in failing to consider the criteria in Listing 1.04 and Listing 12.02 and determine that Mr. Hill suffers from a severe impairment.

## Analysis

### I. Standard of Review.

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir. 2005). Substantial evidence is more than "a mere scintilla," but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401 (1971); Hames v. Heckler, 707 F.2d 162, 164 (5th Cir. 1983). Alternatively, substantial evidence may be described as that quantum of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000). This court may not re-weigh the evidence, try the issues *de novo,* or substitute its judgment for the Commissioner. Perez, 415 F.3d at 461.

The administrative law judge is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. See Arkansas v. Oklahoma, 503 U.S. 91, 11360 (1992). Despite this Court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence exists to support it. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive. Ripley v. Chater, 67 F.3d 552, 555 (5th Cir. 1995).

## II.     **Entitlement to Benefits under the Act.**

To be considered disabled and entitled to benefits under the Act, a claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Pursuant to the regulations promulgated under the Act, the Commissioner engages in a five-step sequential evaluation process to determine whether an individual qualifies as disabled. See 20 C.F.R. § 404.1520(a)(4). At each step, if the Commissioner determines that an individual is or is not disabled (depending on the step), her decision is made on that basis and she does not proceed to the next step. Id. Following these same five steps, the ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity (whether the claimant is working); (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals the severity of an impairment listed in 20 C.F.R., Part 404, Subpart B, Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work (whether the claimant can return to his old job); and (5) whether the impairment prevents the claimant from doing any other work.

Perez, 415 F.3d at 461. The burden of proof is on the claimant in steps one through four, and then at step five, the Commissioner must "show that the claimant can perform other substantial work in the national economy." Id. Once the Commissioner has made this showing, the claimant bears the burden to rebut the finding. Id. An assessment of the claimant's residual functional capacity is used in steps four and five to determine the claimant's ability to perform his past work or any other type of work. Id.

Substantial gainful activity is both substantial, which means it "is work activity that involves doing significant mental or physical activities," and gainful, which means it is "done for pay or profit." 20 C.F.R. § 404.1572(a)-(b); see Copeland v. Colvin, 771 F.3d 920, 924 (5th Cir.

2014). If a person worked for "substantial earnings," he is generally found to be engaged in substantial gainful activity. 20 C.F.R. § 404.1574(a)(1). In calculating a claimant's earnings, "the value of any subsidized earnings" and "the reasonable cost of any impairment-related work expenses" are subtracted from the claimant's gross earnings. 20 C.F.R. § 404.1574(b)(1). The resulting amount is then averaged to a monthly value and compared to the Commissioner's earnings guidelines. Id.  These guidelines provide the average monthly earnings threshold as $1,010 for 2012, $1,040 for 2013, or $1,070 for 2014. Id. § 404.1574 (b)(2); see Substantial Gainful Activity Table, https://www.ssa.gov/oact/cola/sga.html. If a person's earnings are in excess of the threshold, he is presumed to be engaged in substantial gainful activity unless he presents affirmative evidence to the contrary. <u>Disability Insurance Benefits—Substantial Gainful Activity—Rebuttal of Presumption of Ability to engage in Substantial Gainful Activity</u>, SSR 76-4a (S.S.A. 1976);  see <u>Rutherford v. Shalala</u>, 43 F.3d 670 (5th Cir. 1994) ("The regulations . . . create a presumption that the claimant has been engaging in substantial gainful activity based on the claimant's average earnings for the period at issue.").  For example, where a claimant went back to work for several periods of about three months, each time at an earnings level above the SGA threshold, the claimant rebutted the presumption that he had been engaged in SGA by showing that each time he worked, it exacerbated his knee pain and resulted in hospitalization and surgery. SSR 76-4a.

The regulations provide guidance on how to average the claimant's earnings. When a person's work "was continuous without significant change in work patterns or earnings, and there has been no change in the substantial gainful activity earnings levels," the person's earnings will be averaged over the entire period of work requiring evaluation to determine substantial gainful activity. 20 C.F.R. § 404.1574a(a). Where the claimant's work pattern or earnings have changed

significantly, the earnings are averaged "over each separate period of work." Id. § 404.1574a(c). Social Security Ruling 83-35 provides an example that is pertinent here:

> Mr. B. filed a claim in September 1982. He alleged that his onset date of disability was January 1982, when he was hospitalized for 2 weeks due to exacerbation of his arthritic condition. He had done seasonal work on a farm during the months of April through August for a number of years. He worked during the 1982 season, earning about $600 a month, or a total of $3,000.
>
> In this example, earnings from this seasonal work are averaged over the period April 1982 through August 1982, the "actual period of work involved." During this period neither of the qualifying situations occurred: there was no real change in work pattern or earnings, and the SGA earnings level (i.e., over $300 a month) was applicable during the entire period of work. Thus, Mr. B.'s earnings averaged $600 a month during the period April 1982 through August 1982.

Titles II & XVI: Averaging of Earnings in Determining Whether Work Is Substantial Gainful Activity, SSR 83-35 (S.S.A. 1983).

### III.     Plaintiff's Appeal.

Issue No. 1.     Whether the ALJ erred in finding that Mr. Hill has been engaged in substantial gainful activity.

In light of Mr. Hill's request that an onset date of January 1, 2014, rather than October 1, 2012, be used, the Court considers whether there is substantial evidence that Mr. Hill was engaged in substantial gainful activity as of January 1, 2014.

Mr. Hill argues that he was not engaged in SGA. He points to the 2014 residual tracker attached to the letter of CPA Mueller which shows that Mr. Hill received $41,705 in residual payments in 2014. (Pl.'s Mem. Supp, at 18, Rec. Doc. 51-1). He insists that these residuals are payments from prior work and should not be counted towards the calculation of Mr. Hill's 2014 earnings for purposes of determining SGA. Mr. Hill claims that his 2014 tax return was reviewed by Mr. Mueller who concluded that Mr. Hill had gross wages of $48,879 and $7,174 in wages

9

from 2014 acting assignments. Id. He adds that he lacks investigative agencies to assist with residual earnings accounting. Id. at 18-19.

The Commissioner responds that the Mueller letter and its attachments are new evidence that should not be considered by this Court because Mr. Hill has not shown good cause. (Def.'s Mem. Supp., at 6. As addressed by the Court in footnote 1 above, because Mr. Hill submitted this new evidence to the Appeals Council and the Appeals Council considered it in refusing to review the ALJ's decision, the evidence is part of the Record on appeal. The Commissioner also argues the Mueller letter would not change the outcome of the case. Id. at 7. The Commissioner points out that Mr. Hill has not indicated when he performed the acting assignments that resulted in the 2014 residuals or when he performed the acting assignments in 2014. Id. Without this detail, the Commissioner insists, Mr. Hill cannot show that there was a continuous 12 month period where we was not engaged in SGA. Id. The Commissioner adds that Mr. Hill's lack of resources to retain investigative agencies does not relieve him of his burden of proof. Id.

There is more than substantial evidence in the record before the ALJ to support a finding that Mr. Hill was engaged in SGA considering a disability onset date of January 1, 2014. The ALJ had an earnings record for the first six months of 2014 that showed Mr. Hill earned wages of $28,831. Although the ALJ did not have any evidence of which months Mr. Hill was working in the first two quarters, even assuming he worked the entire six months, this averages to $4,805.17, which is well over the threshold to be considered SGA. While Mr. Hill testified that some of that income was residual, his testimony provided no details that would allow the ALJ to calculate the portion that was earned from work in 2014. Although his counsel was asked to do so, no evidence was presented to the ALJ to clarify when he performed work or what portion of his earnings in any particular year was made up of residuals. On the evidence before the ALJ, Mr. Hill engaged

in SGA at least through May 2014, thus, he cannot be found disabled because he cannot show that he had a disability that prevented him from engaging in substantial gainful activity for a twelve month period after the amended onset date of January 1, 2014. The relevant period for this appeal ends on January 30, 2015, the date of the ALJ's decision.

The Mueller letter does not alter this Court's conclusion that substantial evidence supports the determination by the ALJ and the Appeals Council that Mr. Hill was engaged in SGA. As an initial matter, the conclusion in the Mueller letter conflicts with the evidence in the Record. Mr. Hill's earnings records do not include any earnings in the third and fourth quarters of 2014 and Mr. Hill's 2014 tax return was not provided. Using Mr. Mueller's method of subtracting residuals from earnings with the records before the Court, the Court finds that Mr. Hill has recorded wages of $28,831 for the first two quarters of 2014 and residuals of $12,686.89 for the same period, which leaves wages of $16,144 earned for work in the first two quarters of 2014. This is more than twice the amount Mr. Mueller calculated as Mr. Hill's earnings net of residuals for the entire year. It is unclear how Mr. Mueller could have come up with a lower number for a longer period. The Court notes that averaged over six months, the Court's calculation of earnings less residuals indicates Mr. Hill earned $2,690.69 per month for work performed in the first half of 2014. This is well over the threshold for SGA and assumes that Mr. Hill worked all six months.

Mr. Mueller's conclusions also conflict with the Record before the Court because Mr. Mueller stated that Mr. Hill's 2014 IRS Form 1040 showed Mr. Hill had gross taxable wages of $48,879. The Record shows earnings of $28,831 in the first two quarters of 2014. If these figures are accurate, the Court would expect the difference of these two figures (or $20,048) to be equal to the income Mr. Hill received in the third and fourth quarters of 2014. But, the Residual Tracker shows $27,449.79 in residual payments in those same quarters. These numbers are not even close.

11

This indicates to the Court that not all payments recorded as residuals were also recorded as wages in the earnings record and Mr. Hill's tax return. The Court adds that the residual tracker includes payor entities that do not appear in Mr. Hill's earnings records as employers. For example, the Residual Tracker shows payments by Magnolia Pictures, LLC, Butler Productions, LLC, CBS Films Inc., Area 51 Productions Inc., Starz Media, LLC, NBC Universal, Inc., Summit Entertainment, HBO Independent Productions, and Home Box Office, Inc., but the earnings records do not show any payments by these entities. In sum, the Court is not convinced that Mr. Mueller's method of subtracting Residual Tracker residuals from Mr. Hill's reported wages is a reliable way to determine the portion of Mr. Hill's earnings that were derived from Mr. Hill's work in 2014.

Moreover, Mr. Mueller's conclusion that Mr. Hill earned $7,174 in 2014 from actual work performed in 2014 does not help determine whether Mr. Hill was engaged in SGA in 2014. Because Mr. Hill has not indicated what months he worked in 2014, it is not possible to determine the period Mr. Hill worked for purposes of averaging the $7,174 earned. Such an analysis is necessary to determine if Mr. Hill engaged in SGA. For example, if Mr. Hill acted in one show in January and February 2014 and earned $3,500 and acted in another show from April to June 2014 and earned $3,674, Mr. Hill's average monthly earnings would be $1,750 from January to February and $1,224 for April to June. By nature of the profession of acting, Mr. Hill's acting work would likely occur in only certain portions the year. In addition, Mr. Hill himself confirmed that when he gets an acting gig, "contracts are pretty good," and that "you can work a couple of shows and make a good bit." R. at 42. This makes it more likely that during the periods he worked in 2014, he exceeded the minimum necessary for SGA of $1,070 per month.

That the Court lacks the information needed to make a definitive determination in this regard is the fault of claimant. The ALJ told Mr. Hill's counsel that he needed to indicate what work Mr. Hill's payments came from. R. at 34. He did not present this information. In issuing her decision, the ALJ noted that she had requested "a chart to indicate when exactly the work was performed and which residuals flowed from such work." R. at 20. Although Mr. Hill's counsel presented Mr. Mueller's letter to the Appeals Council, he still did not provide the requested chart detailing when work was performed. The chart included in Mr. Hill's brief is not explained and, moreover, it does not indicate what months Mr. Hill worked in 2014. The Court must assume from Mr. Hill's repeated failure to indicate when he worked that this information would not be favorable to his case. Even if true, which is in doubt, the statement that Mr. Hill only earned $7,174[2] from work performed in 2014 is insufficient on its own to show that Mr. Hill was not engaged in SGA at some point in 2014. Because he was engaged in SGA during 2014, the time frame selected by Mr. Hill, he cannot show that he was not able to do so for a continuous 12 month period.

Mr. Hill's earnings records show that he earned well over the levels required for a finding of SGA in 2014. Because the Court finds that Mr. Mueller's method of subtracting Residual Tracker residuals from earnings is not a reliable method and because Mr. Mueller's conclusion is not sufficient on its own to show that Mr. Hill was not engaged in SGA, the Court finds that there is substantial evidence in the record to support the conclusions that Mr. Hill has been engaged in SGA after the amended onset date of January 1, 2014, and that there has been no continuous 12-month period during which the claimant has not engaged in SGA.

---

[2] Mr. Hill's contention that he only earned $7,174 from work in 2014 because the rest constitutes residuals which shouldn't count as earnings would likely mean that earnings in previous years should also be reduced for residual income. The Court notes that this, if correct, could result in a redetermination of whether Mr. Hill meets insured status requirements through September 30, 2017 as concluded by the ALJ.

Issue No. 2.   Whether the ALJ erred in in failing to consider the criteria in Listing 1.04 and Listing 12.02 and determine that Mr. Hill suffers from a severe impairment.

Because the Court has determined there is substantial evidence to support the conclusion that Mr. Hill was engaged in SGA from January 1, 2014 through the date of decision, it need not reach Issue No. 2.

## RECOMMENDATION

Accordingly, IT IS RECOMMENDED that the Motion for Partial Summary Judgment with Amended Onset Date by Mr. Hill (Rec. Doc. 15) be DENIED; and the cross-motion of the Commissioner for summary judgment (Rec. Doc. 19) be GRANTED.

## OBJECTIONS

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 31st day of January, 2017.

_____
Janis van Meerveld
United States Magistrate Judge